UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IVAN EUBANKS | * | CIVIL ACTION NO. 17-1217 |
| | * | |
| | * | SECTION: "E"(1) |
| VERSUS | * | |
| | * | JUDGE SUSIE MORGAN |
| | * | |
| SASKIA O. EUBANKS | * | MAGISTRATE JUDGE |
| | * | JANIS VAN MEERVELD |
| ************************************* | * | |

REPORT AND RECOMMENDATION

On August 4, 2017, the District Judge ordered that plaintiff Ivan Eubanks pay the reasonable expenses incurred by defendant Saskia O. Eubanks as a result of Mr. Eubanks' failure to comply with the Court's orders and referred the matter to the undersigned for a calculation of the amount owed. (Rec. Doc. 128).

Background

Mr. Eubanks filed this lawsuit on February 10, 2017, pursuant to the Hague Convention of the Civil Aspects of International Child Abduction (the "Convention") claiming that his wife, Ms. Eubanks, wrongfully removed their minor children E.E. and P.E. from the Cayman Islands and was wrongfully retaining them in the United States in violation of the Convention. He sought to have the children returned to the Cayman Islands. As a threshold to pursue his claims pursuant to the Convention, Mr. Eubanks was required to prove that the children were habitually resident in the Cayman Islands. The District Court issued a scheduling order requiring that all written discovery be propounded by March 3, 2017, and all responses to that discovery be provided by March 10, 2017. The matter was tried before the District Judge without a jury on May 11 and May 12, 2017. The Court found that Mr. Eubanks had failed to prove that the children were habitually resident in the Cayman Islands at the time they were removed by Ms. Eubanks. Having failed to

1

prove the threshold issue, the Court denied his Verified Complaint for Return of Children to the Cayman Islands.

A key factor considered by the Court was that although Mr. Eubanks testified that he did not actively seek other employment while living in the Cayman Islands, this statement was proven false by certain untimely produced emails. Instead, the emails revealed countless communications between Mr. Eubanks and potential employers in 2016 including the United States Department of State, corroborating Ms. Eubanks' testimony that Mr. Eubanks was very actively pursuing a position with the State Department while in the Cayman Islands.

Prior to this production, for many months, Mr. Eubanks had denied that he had engaged in such discussions or that such communications existed in writing, despite being asked repeatedly and specifically. On March 3, 2017, Ms. Eubanks had requested that Mr. Eubanks produce any and all correspondence between himself and any prospective employer from January 1, 2015, through the present. She also served Interrogatories asking Mr. Eubanks to identify each individual or entity that he had contacted for the purposes of obtaining employment since January 1, 2015. Pursuant to the Court's February 24, 2017, Scheduling Order, Mr. Eubanks was required to produce the requested correspondence by March 10, 2017. But his response did not include the names of any individuals or entities that he corresponded with during 2016 or 2017, nor did it include any correspondence for this time period although the time period was clearly within the scope of the request.

At trial on May 11, 2017, Mr. Eubanks first testified under oath that he did not apply for any jobs in 2016, but on cross examination, he admitted he had applied for a job with the State Department in 2016. The Court ordered that he perform another search for emails responsive to Ms. Eubanks' request. The next morning he produced three documents and offered no explanation

for his earlier failure to produce them. The Court questioned Mr. Eubanks' counsel regarding the method used to identify responsive correspondence and when it became clear that Mr. Eubanks had performed the search himself without the assistance of his counsel or a professional third-party vendor, the Court ordered Mr. Eubanks to retain a third-party vendor to perform a complete search of his emails.

On June 13, 2017, pursuant to the Court's order, Mr. Eubanks produced over 1,800 responsive emails, including countless communications between Mr. Eubanks and potential employers during 2016.

## Law and Analysis

*1. Attorney's Fees Award*

The District Court ordered that Mr. Eubanks pay Ms. Eubanks' reasonable attorneys' fees incurred as a result as his failure to comply with the Court's orders as a sanction pursuant to Federal Rule of Civil Procedure 37(b)(2). The Court found that Mr. Eubanks had violated both the Court's written scheduling order of February 24, 2017, as well as the Court's oral order on May 11, 2017, by failing to timely produce the correspondence Ms. Eubanks had requested.

Under rule 37(b)(2), "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court must order the disobedient party . . . to pay the *reasonable expenses*, including attorney's fees, *caused by* the failure." Id. (emphasis added). "[T]he assessment of attorney's fees is penal in nature; it is designed to penalize those who engage in the charged conduct and to deter others who might be tempted to follow in similar conduct." Batson v. Neal Spelce Assocs., Inc., 765 F.2d 511, 516 (5th Cir. 1985). The United States Court of Appeals for the Fifth Circuit has explained that this discovery sanction "provides that only those expenses, including fees, caused by the failure to comply may be assessed against the noncomplying party." Id. Thus, in Batson,

the Fifth Circuit reversed the district court's award of a lump sum of $30,000 in attorney's fees and remanded for reconsideration because the original award included attorney's fees "for discovery matters that were not related to [plaintiff's] failure to comply with the court's order." Id.

Similarly here, the assessment of fees owed pursuant to the discovery sanction ordered by the District Judge can only encompass those fees incurred by Ms. Eubanks which are related to Mr. Eubanks' failure to comply with the Court's orders. Ms. Eubanks argues that all fees and costs incurred by her after February 1, 2017, "would have been substantially curtailed" had Mr. Eubanks complied with the Court's discovery orders and that, therefore, these fees and costs should be awarded to her in their entirety. Under established Fifth Circuit law, however, such an award would be too broad as a discovery sanction. See Batson, 765 F.2d at 516.

2. *Standard for Determining Reasonable Attorney's Fees*

The Court engages in a two-step process to determine reasonable attorney's fees. Matter of Fender, 12 F.3d 480, 487 (5th Cir. 1994); see Saizan, 448 F.3d at799 ("[W]e use the lodestar method to calculate an appropriate attorney's fee award under the FLSA."). First, the Court computes the lodestar "by multiplying the number of hours reasonably expended by the prevailing hourly rate in the community for similar work." Id.; see Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939, 76 L. Ed. 2d 40 (1983) ("The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."). The party requesting fees bears the burden of proving that the rates charged and hours expended are reasonable. See Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984); Walker v. U.S. Dep't of Hous. & Urban Dev., 99 F.3d 761, 770 (5th Cir. 1996); Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 324 (5th Cir. 1995).

"The court then adjusts the lodestar upward or downward depending upon the respective weights of the twelve factors set forth in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir.1974)." Fender, 12 F.3d at 487. The Johnson factors are:

> 1) time and labor required, (2) novelty and difficulty of the issues, (3) skill required to perform the legal services properly, (4) preclusion of other employment, (5) customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by client or circumstances, (8) amount involved and results obtained, (9) experience, reputation and ability of the attorneys, (10) undesirability of the case, (11) nature and length of the professional relationship with the client, and (12) award in similar cases.

Id.

3. *Hourly Rate*

Ms. Eubanks proposes the following hourly rates for three attorneys who performed work on this matter:

Bernadette R. Lee - $300

Edith H. Morris - $350

Marynell Lapuade Piglia - $300

Ms. Eubanks proposes the following hourly rates for three paralegals who worked on the matter:

Donna Marshall - $90

Suzie Craig - $80

Nicole B. LaCava - $90

Ms. Eubanks and her counsel provide the invoices that support these rates, which suggests that the listed rates are the listed individuals' customary billing rates. However, no certification regarding the customary rates or market rates has been provided. Nor have Ms. Eubanks or her counsel provided any information regarding counsel's qualifications. Nonetheless, Mr. Eubanks has not challenged the proposed hourly rates.

5

"'[R]easonable' hourly rates 'are to be calculated according to the prevailing market rates in the relevant community.'" McClain v. Lufkin Indus., Inc., 649 F.3d 374, 381 (5th Cir. 2011) (quoting Blum v. Stenson, 465 U.S. 886, 895–96 (1984)). "[T]he burden is on the applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id. (quoting Blum, 465 U.S. at 896 n.11). When the attorney's customary billing rate is within the range of prevailing market rates and is "not contested, it is *prima facie* reasonable." Louisiana Power & Light Co. v. Kellstrom, 50 F.3d 319, 328 (5th Cir. 1995). Prevailing market rates in this community span a wide spectrum. See Norris v. Causey, No. CV 14-1598, 2016 WL 1046101, at *9 (E.D. La. Mar. 16, 2016) (finding rates of $250, $200, and $150 were reasonable for attorneys with 31, 12 and 8 years respectively); Jefferson v. Baywater Drilling, LLC, No. CV 14-1711, 2015 WL 7281612, at *1 (E.D. La. Nov. 17, 2015) (affirming magistrate judge's report and recommendation, Rec. Doc. 51, finding that rates of $500 and $450 per hour were reasonable for two attorneys with 40 years of experience in maritime litigation and that $240 per hour was reasonable for an attorney with seven years' experience in maritime litigation); Joiner v. Colvin, No. CIV.A. 14-1315, 2015 WL 6442710, at *1 (E.D. La. Oct. 23, 2015) (approving rate of $175 per hour in an equal Access to Justice Act matter, as requested by the plaintiff); Adams v. City of New Orleans, No. CIV.A. 13-6779, 2015 WL 4606223, at *3 (E.D. La. July 30, 2015) (rate of $350 per hour reasonable for an attorney with 29 years of experience); Receivables Exch., LLC v. Advanced Tech. Servs., Inc., No. CIV.A. 14-668, 2015 WL 2372434, at *5 (E.D. La. May 18, 2015) (finding a rate of $240 reasonable for an attorney with 23 years of experience in commercial litigation); Offshore Marine Contractors, Inc. v. Palm Energy Offshore, LLC, No. CIV.A. 10-4151, 2014 WL 5039670 (E.D. La. Sept. 25, 2014) (affirming the magistrate judge's report and

recommendation finding that $325 an hour, $275 an hour and $225 an hour were reasonable rates for attorneys with 19, 7, and 4 years of experience, respectively); J & J Sports Prods., Inc. v. Evolution Entm't Grp., LLC, No. CIV.A. 13-5178, 2014 WL 6065601, at *1 (E.D. La. Nov. 12, 2014) (affirming magistrate judge's finding that $300 per hour was reasonable for an attorney with 32 years of experience in a case where the rate was not contested); Enhanced Louisiana Capital v. Brent Homes, No. CIV.A. 12-2409, 2013 WL 5428687, at *1 (E.D. La. Sept. 26, 2013) (rejecting plaintiffs request for their contingency award and instead awarding fees based on the number of hours spent and the rates of $350 for the lead attorney and $250 for the second attorney).

As evidenced above, the rates requested by Ms. Eubanks' lawyers fall within this community's range. Significantly, they are also rates actually charged to Ms. Eubanks; unlike in a plaintiff's personal injury action or Fair Labor Standards Act or Title VII case, there was no expectation that the fees would later be shifted to her opponent. This is in itself evidence that the rates are within the range of prevailing market rates in the relevant community. Furthermore, it is telling that Mr. Eubanks did not challenge them as being unreasonable, although he protested and challenged every other aspect of Ms. Eubanks' Supplemental Memorandum Regarding Reasonable Expenses Incurred by Saskia Eubanks. (Rec. Doc. 130).

4. *Reasonable Hours Expended as a Result of Violation of Discovery Orders*

Having thus established that the rates requested are reasonable, the Court turns its attention to the reasonableness of the hours expended as a result of Mr. Eubanks' failure to obey the Court's orders. Ms. Eubanks submits that she is entitled to an award of $37,537.64 for work her attorneys performed after trial "as a result of Mr. Eubanks' discovery failures." She notes that only $15,347.64 of this amount was actually charged to Ms. Eubanks because Edith Morris did not charge for her time. She explains that Ms. Morris "no charged" her time because Ms. Eubanks had

7

been put in a strained financial position when Mr. Eubanks purportedly withdrew $40,000 from a shared bank account that Ms. Eubanks says is separate property that she received as an inheritance. Other than an appeal to equity, Ms. Eubanks does not submit a reason why she should recover an award for attorney's fees that she did not actually incur.

In response, Mr. Eubanks does not even address the possibility that the $22,109 that Ms. Morris "no charged" should be included in the fee award. Mr. Eubanks instead challenges the reasonableness of several billing entries submitted by Ms. Eubanks. He says some are not related to the discovery abuses or are so vague that it cannot be determined what subject matter they pertain to. Several of these challenged entries are Ms. Morris's time entries, which, as noted above, were not actually charged.

Although Ms. Morris did not charge for her time, the Court finds it appropriate to include the time she spent working on this matter in the calculation of reasonable attorney's fees so long as properly attributable to Mr. Eubanks' failure to obey the Court's orders. The fact that an attorney does not pursue collection or writes off time due to her client's inability to pay does not mean that the time was not actually spent in pursuit of her client's cause or that it was duplicative or excessive. As noted, Mr. Eubanks presented no argument to the contrary.

The Court has reviewed the billing entries to determine whether they are reasonable. The Court agrees with Mr. Eubanks that the following time entries must be discounted or eliminated because they do not relate to Mr. Eubanks' failure to comply with the Court's orders:

- EHM Time Entries:
    - 6/6/2017, 1 hour, 0.4 hour, 0.5 hour, and 0.4 hour will be reduced by 50% to a total of 1.15 hours because the status conference with the Court dealt in

>   > part with Ms. Eubanks' removal of the children outside of the Eastern District of Louisiana.
>
> - BRL Time Entries:
>   - 6/6/2017, 1.5 hours, will be reduced by 50% to a 0.75 hour because the status conference with the Court dealt in part with Ms. Eubanks' removal of the children outside of the Eastern District of Louisiana.
>   - 6/13/2017, 0.5 hour will be reduced by 50% to 0.25 hour because the time entry includes time spent on an unrelated matter (reviewing a writ application)
>   - 6/20/2017, 2 hours will be reduced by 50% to 1 hour because the time entry includes time spent on an unrelated matter (reviewing denial of a writ application)

This results in a reduction of $402.50 for Ms. Morris's time and $600 for Ms. Lee's time, reducing the request for $37,537.64, to $36,535.14. Further, where, as here, multiple attorneys are representing the client, "the possibility of duplication of effort along with the proper utilization of time should be scrutinized. The time of two or three lawyers in a courtroom or conference when one would do may be obviously discounted." Abrams v. Baylor Coll. of Med., 805 F.2d 528, 535 (5th Cir. 1986) (quoting Johnson v. Georgia Highway Exp., Inc., 488 F.2d 714, 717 (5th Cir. 1974) abrogated by Blanchard v. Bergeron, 489 U.S. 87, 109 S. Ct. 939, 103 L. Ed. 2d 67 (1989)). The Court's review of the time entries has been complicated somewhat by Ms. Eubanks' counsel's practice of block billing. Of course this does not preclude an award of attorneys' fees, but to the extent block billing limits the court's ability to accurately assess the reasonableness of the fee petition, courts can reduce the award by a percentage. See Jolie Design & Décor, Inc. v. Gogh, No.

CV 15-0740, 2016 WL 4708210, at *6 (E.D. La. Aug. 11, 2016), report and recommendation adopted, No. CV 15-0740, 2016 WL 4718186 (E.D. La. Sept. 8, 2016) (recommending that recoverable hours be reduced by 35% as a result of block billing where some block billed entries included redacted time entries or time entries including time spent on an unrelated proceeding without a reduction in the total time); Canon U.S.A., Inc. v. S.A.M., Inc., No. CIV A 07-1201, 2009 WL 35334, at *4–5 (E.D. La. Jan. 6, 2009) (reducing block billed time entries by 25%). Here, between the timing of the entries and the reasonably detailed narrative, the Court concludes that (except as noted above), the requested entries pertain to Mr. Eubanks' failure to obey the Court's orders. However, the block billing has limited the Court's ability to determine whether the amount of time spent on tasks is reasonable.

Additionally, the Court notes that Plaintiff's counsel's billing records do not reflect any time entries written off as "excessive, duplicative, or inadequately documented." Creecy v. Metro. Prop. & Cas. Ins. Co., 548 F. Supp. 2d 279, 286 (E.D. La. 2008); Orthopedic Practice, LLC v. Hartford Cas. Ins. Co., No. CIV.A. 06-08710, 2008 WL 1712300, at *4 (E.D. La. Apr. 8, 2008). When awarding attorney's fees, courts require that the attorneys seeking an award have exercised billing judgment and have reduced fees by a percentage or line by line when the attorneys have failed to do so. Creecy, 548 F. Supp. 2d at 286.

Because three attorneys worked on this matter, there is no evidence that they exercised billing judgment, and the entries are block billed, the Court finds the most appropriate resolution to be a reduction of the requested fees by 25%. Thus, as a result of the discovery abuses, the Court finds that Ms. Eubanks should be awarded 75% of $36,535.14, for a total of $27,401.36.

Neither party has addressed the Johnson factors and the Court does not see a reason to increase or decrease this award.

Recommendation

For the foregoing reasons, the undersigned recommends that Mr. Eubanks be ordered to pay Ms. Eubanks $27,401.36 for her reasonable attorney's fees incurred as a result of Mr. Eubanks' discovery abuses.

Objections

A party's failure to file written objections to the proposed findings, conclusions and recommendations in a magistrate judge's report and recommendation within fourteen (14) calendar days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*).

New Orleans, Louisiana, this 17th day of October, 2017.

*[signature: Janis van Meerveld]*
Janis van Meerveld
United States Magistrate Judge